IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
IOWA CENTRAL DIVISION

| | |
|---|---|
| J.G., a minor, by next of friend and parent, HEIDI GOMEZ,<br><br>PLAINTIFF,<br><br>vs.<br><br>BLUESTEM BRANDS, INC., d/b/a FINGERHUT,<br><br>DEFENDANT. | Civil Action No.<br><br>COMPLAINT and DEMAND FOR JURY TRIAL |

NOW COMES the Plaintiff, J.G. ("Plaintiff" or "J.G."), a minor, by next of friend and parent, Heidi Gomez ("Plaintiff" or "Heidi" or "Ms. Gomez") by and through her attorney, L. Ashley Zubal, and for her Complaint against the Defendant, Bluestem Brands, Inc., d/b/a Fingerhut (hereinafter "Defendant" or "Fingerhut"), alleges as follows:

I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's repeated violations of the Telephone Consumer Protection Act (hereinafter "TCPA"), 47 U.S.C. Section 227 et seq., the Iowa Debt Collection Practices Act, § 537.7103, et seq., (hereinafter "IDCPA"), and the invasions of the Plaintiff's personal privacy by this Defendant and their agents in their illegal efforts to collect a consumer debt.

1

## II.   JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 pursuant to the TCPA claim, a federal cause of action, and supplemental jurisdiction exists for the state law IDCPA claim pursuant to 28 U.S.C. § 1367.

3. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b), in that the Defendant transacts business in Iowa and the conduct complained of occurred here.

## III.   PARTIES

4. Plaintiff, Heidi Gomez, as next of friend and parent to J.G., a minor, are natural persons residing in Wayne County, Iowa.

5. Defendant, Bluestem Brands, Inc., d/b/a Fingerhut, is a Delaware business entity with an address of 1209 Orange Street, Wilmington, Delaware 19801, who is engaged in the collection of debts allegedly owed to another in the State of Iowa.

6. Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

7. Defendant is a "debt collector" as that term is defined by Iowa Code § 537.7102(5).

## IV.   FACTUAL ALLEGATIONS

8. At some point in time, a consumer incurred a financial obligation to the Defendant, Fingerhut, that was primarily for personal, family or household purposes, that allegedly went into default for late payment, and is therefore an alleged "debt" as that term is defined by Iowa Code § 537.7102(3).

9. Sometime during November, 2012, the Plaintiff began receiving a high volume of collection calls from the Defendant.

10. The collection calls were placed to the Plaintiff, J.G.'s cellular phone. These calls were placed by the Defendant through the use of an automated telephone dialing system ("ATDS") and/or by using artificial or pre-recorded messages.

11. On several occasions, the Plaintiff, J.G., answered the calls and heard an automated message announcing the call was for a "Shane Lowe." Only after the pre-recorded message did a live representative come on the line to speak with the Plaintiff.

12. The Plaintiff, J.G., answered one of the collection calls placed by the Defendant in November, 2012. After a pause a representative came on the line and requested to speak with a Shane Lowe. The Plaintiff advised that the phone number was not that of Shane Lowe and that no one of that name resided at her residence. The call ended.

13. The Plaintiff, J.G., continued to receive calls from the Defendant during November on an almost daily basis, sometimes multiple times per day.

14. Subsequent to the initial call, the Plaintiff, J.G., answered a collection call from the Defendant and after a pause a representative came on the line and requested to speak with a Shane Lowe. The Plaintiff then placed her mother, Heidi Gomez, on the line. Ms. Gomez explained that no one by the name of Shane Lowe lived at the address and that the number the Defendant was calling was that of her minor daughter. Ms. Gomez requested the Defendant cease calling and ended the call.

15. The Plaintiff, J.G., continued to receive calls from the Defendant on an almost daily basis, sometimes multiple times per day, through November, 2012; December, 2012; January, 2013; February, 2013; March, 2013; and April, 2013.

16. On several occasions between December, 2012 and April, 2013, the Plaintiff, J.G., answered collection calls placed by the Defendant. During each call the Plaintiff reminded the Defendant that the phone number called was not that of Shane Lowe, that a Shane Lowe did not live at her residence and requested the Defendant cease calling.

17. On several occasions between December, 2012 and April, 2013, the Plaintiff's mother, Heidi Gomez, answered collection calls placed by the Defendant to J.G.'s phone. During each call Ms. Gomez reminded the Defendant that the phone number called was not that of Shane Lowe but rather that of her minor daughter, that a Shane Lowe did not live at her residence and requested the Defendant cease calling. Also on several occasions Ms. Gomez reminded the Defendant that she had provided this information numerous times and could not understand why the Defendant continued to call.

18. During May, 2013, the Defendant continued to place collection calls to the Plaintiff, J.G.'s cell phone on an almost daily basis, sometimes multiple times per day.

19. On or about May 06, 2013, the Plaintiff, J.G., answered a collection call placed by the Defendant. After a pause a representative came on the line and requested to speak with a Shane Lowe. The Plaintiff yet again advised that the phone was not that of Shane Lowe, that a Shane Lowe did not live at her residence

4

and that she had requested on numerous occasions that the Defendant cease contacting her phone.

20. On or about May 18, 2013, Ms. Gomez retained Marks Law Firm for the purpose of assisting with various financial issues and upon advising of the circumstances regarding the phone calls as detailed above, also retained Marks Law Firm for the purpose of handling the case herein.

21. On or about May 22, 2013, the Plaintiff, J.G., answered a collection call placed by the Defendant. After a pause a representative came on the line and requested to speak with a Shane Lowe. The Plaintiff placed her mother, Heidi Gomez on the line. Ms. Gomez again advised that the phone called was not that of Shane Lowe and that Shane Lowe did not reside at their residence. She went on to explain the notice was provided to the Defendant on numerous occasions. She provided her attorney's name and contact information and requested the Defendant cease calling. The representative refused to provide Ms. Gomez with her name.

22. The Plaintiff, J.G. continued to receive collection calls from the Defendant on a daily basis.

23. On or about May 23, 2013, after receiving a second collection call from the Defendant on that day, the Plaintiff, J.G., answered and requested the Defendant cease calling.

24. The Plaintiff, J.G., continued to receive collection calls from the Defendant on a daily basis.

25. On or about May 29, 2013, the Plaintiff, J.G., answered a collection call from the Defendant and requested the Defendant cease calling.

26. The Plaintiff, J.G., continued to receive collection calls from the Defendant on a daily basis.

27. On or about May 31, 2013, the Plaintiff, J.G., answered a collection call from the Defendant and placed her mother, Heidi Gomez, on the line. The representative asked to speak with Shane Lowe. Ms. Gomez again explained that the phone was not that of Shane Lowe and that the unauthorized calls had continued since November, 2012. The representative refused to provide his full name only stating he was "Gabriel" and that he was calling from Fingerhut. After discussing the circumstances further Gabriel confirmed J.G.'s phone number would be removed from the "auto-dailer." Ms. Gomez attempted to provide her attorney's name and contacted information and the representative refused to accept same.

28. During each call answer by the Plaintiff, J.G., or her mother, Heidi Gomez, the Defendant's representatives failed to state the communication was from a debt collector and that any information obtained would be used for that purpose.

29. As a result of the Defendant's continued placement of unauthorized collection calls, the Plaintiff has experienced actual damages in the form of emotional distress, including but not limited to the following: embarrassment, humiliation, stress, confusion, loss of concentration, anger, frustration, loss of sleep, fear, anxiety, and a negative effect on her family relationships.

30. Each call on each occasion from Defendant was a collection communication in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(f), 537.7103(2)(b), 537.7103(2)(d), 537.7103(4)(b), and 537.7103(5)(e), amongst others.

### Telephone Consumer Protection Act

31. At all times relevant to this Complaint, the Plaintiff, J.G., was and is a "person" as defined by the TCPA 47 U.S.C. § 153(32).

32. At all times relevant to this Complaint, the Defendant has owned, operated, and or controlled "customer premises equipment" as defined by the TCPA 47 U.S.C. § 153(14) that originated, routed, and/or terminated telecommunications.

33. Defendant at all times relevant to the Complaint herein engages in "telecommunications" defined by the TCPA 47 U.S.C. § 153(43).

34. The Defendant at all times relevant to the Complaint herein engages in "interstate communications" by the TCPA 47 U.S.C. § 153(22).

35. At all times relevant to this Complaint, the Defendant has used, controlled, and/or operated "wire communications" as defined by the TCPA 47 U.S.C. § 153(52), that existed as instrumentalities of interstate and intrastate commerce.

36. At all times relevant to this Complaint, the Defendant has used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

### Illegal Auto-Dialed Collection Calls

37. Within one year immediately preceding the filing of this lawsuit, the Defendant telephoned the Plaintiff, J.G.'s cellular phone without express consent on numerous and multiple occasions in violation of the TCPA.

38. Within one year immediately preceding the filing of this lawsuit, the Defendant telephoned the Plaintiff, J.G.'s cellular phone on numerous and multiple occasions leaving automated messages in violation of the TCPA.

39. The Defendant and its collectors repeatedly called the Plaintiff, J.G. on her cell phone using an automatic telephone dialing system ("ATDS") in an attempt to collect this debt.

### Respondeat Superior Liability

40. The acts and omissions of the Defendant and its representatives employed as agents by the Defendant who communicated with the Plaintiff, J.G. as more further described herein, were committee within the time and space limits of their agency relationship with their principal, the Defendant.

41. The acts and omissions by the Defendant and its representative were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by the Defendant in collecting consumer debts.

42. By committing these acts and omissions against the Plaintiff, J.G., the Defendant and its representatives were motivated to benefit their principal, Defendant.

43. The Defendant is therefore liable to the Plaintiff, J.G., through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by the Defendant and its collection employees, including but not limited to violations of the IDCPA, in their attempts to collect this debt from the Plaintiff.

### V. FIRST CLAIM FOR RELIEF: VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)

44. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

45. Within the year period immediately preceding this action, the Defendant made numerous calls to the Plaintiff, J.G.'s cellular telephone service using an automatic telephone dialing system in violation of the TCPA, 47 U.S.C. Section 227(b)(1)(A)(iii), and 47 C.F.R. 64.1200 (a)(1)(iii).

46. The acts and or omissions of the Defendant were at all times material and relevant hereto, as described in this Complaint, were done unfairly, unlawfully, intentionally, deceptively and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

47. As a causally-direct and legally proximate result of the above violations of the TCPA and the C.F.R., the Defendant at all times material and relevant hereto, as described in this Complaint, caused the Plaintiff to sustain damages.

48. The Defendant did not have the prior express consent of the Plaintiff to use an automatic telephone dialing system to call the Plaintiff's cellular telephone and in the event the Defendant did have express consent, that consent was clearly and unambiguously revoked in November, 2012.

49. All calls placed to the Plaintiff, J.G.'s cell phone subsequent to the notification that the phone called was not that of Shane Lowe in November, 2012 were made willfully.

50. Under the 47 U.S.C. Section 227(b)(3)(B), the Plaintiff is entitled to statutory damages under the TCPA of $500.00 per phone call made to the Plaintiff.

51. Defendant willfully and knowingly violated the TCPA, and as such the Plaintiff is entitled to $1,500.00 per phone call made to the Plaintiff pursuant to the 47 U.S.C. Section 227(b)(3).

52. Plaintiff is entitled to injunctive relief prohibiting the Defendant from contacting the Plaintiff on her cellular phone using an automated dialing system pursuant to 47 U.S.C. Section 227(b)(3)(a).

53. WHEREFORE, Plaintiff prays that judgment be entered against the Defendant:

### COUNT I.
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. Section 227 et seq.

i   For an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. Section 227(b)(3)(B) against Defendant and for Plaintiff;

i   For an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. Section 227(b)(3) against Defendant and for Plaintiff;

i   For an injunction prohibiting the Defendant from contacting the Plaintiff on her cellular phone using an automated dialing system pursuant to 47 U.S.C. Section 227(b)(3)(a); and

i   For such other and further relief as may be just and proper.

### VI.   SECOND CLAIM FOR RELIEF: VIOLATION OF THE IOWA DEBT COLLECTION PRACTICES ACT (IDCPA)

54. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

55. The Defendant, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA including, but not limited to, each and every one of the above-cited provisions of the IDCPA, Iowa Code § 537.7103 et seq.

56. As a result of each and every Defendant's violations of the IDCPA, Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y); and, reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendant:

## COUNT II.
## VIOLATIONS OF THE IOWA DEBT COLLECTION PRACTICES ACT
## Iowa Code § 537.7103 et seq.

- For an award of actual damages pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of statutory damages of $1,000.00 pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to § 537.5201(8) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

### VII.   THIRD CLAIM FOR RELIEF: INVASION OF PRIVACY

57. The Defendant's repeated improper communications with the Plaintiff, despite the Plaintiff's multiple requests that the Defendant cease contacting her, violated the Plaintiff's right to privacy.

58. The Defendant intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff.

59. The Defendant intentionally caused harm to the Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting this debt thereby invading and intruding upon Plaintiff's right to privacy.

60. The Plaintiff had a reasonable expectation of privacy in the Plaintiff's solitude, seclusion, and or private concerns or affairs.

61. These intrusions and invasions by the Defendant occurred in a way that would be highly offensive to a reasonable person in that position.

62. As a result of such invasions of privacy, the Plaintiff is entitled to actual damages in an amount to be determined at trial.

WHEREFORE, the Plaintiff, J.G., prays for judgment against Defendant in an amount representing full and fair compensation for the injuries and damages as set forth above, for such attorneys' fees, interest, and costs as allowed by law, and for such other relied as may be just under the circumstances.

## VIII.  JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

  /s/ L. Ashley Zubal
L. Ashley Zubal IS9998256
Marks Law Firm, P.C.
4225 University Avenue
Des Moines, IA 50311
(515) 276-7211
(515) 276-6280
ATTORNEY FOR PLAINTIFF